UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

| | |
|---|---|
| WILLIAM ANDERSON, | CIVIL ACTION NO. 6:17-133-KKC |
| **Plaintiff,** | |
| V. | **OPINION AND ORDER** |
| KNOX COUNTY, JOHN PICKARD, *in his individual capacity*, DEREK EUBANKS, *in his individual capacity*, JASON YORK, *in his individual capacity*, BRIAN JOHNSON, *in his individual capacity*, MARK MEFFORD, *in his individual capacity*, JACKIE JOSEPH, *in his individual capacity*, and TYSON LAWSON, *in his individual capacity*, | |
| **Defendants.** | |

*** *** ***

Criminal charges for the murder of Bob Wiggins were instituted against Plaintiff William Anderson on December 3, 2011. (DE 1 at 21 ⁋ 134).[1] After spending nearly five years in state custody, on May 25, 2016, Anderson was acquitted. *Id.* at 2 ⁋ 1. Pursuant to 42 U.S.C. § 1983, Anderson then filed this suit against Knox County, former Knox County Sheriff John Pickard, and Knox County Sheriff's Department Officer Derek Eubanks ("Knox County Defendants"); and Kentucky State Police Officers Jason York, Brian

---

[1] Anderson does not indicate the precise date of his arrest anywhere in the Record.

Johnson, Mark Mefford, Jackie Joseph, and Tyson Lawson ("KSP Defendants"). seeking relief for malicious prosecution, other alleged violations of his constitutional rights, and various state-law torts. (DE 1).

The matter is currently before the Court on three motions to dismiss filed by the defendants. (DE 25; DE 29; DE 30). The Knox County Defendants and KSP Defendants argue that all of Anderson's claims should be dismissed as untimely and for failing to state a claim under Fed. R. Civ. P. 12(b)(6). (DE 25; DE 30). Defendant Tyler Lawson independently moves for the dismissal of all of Anderson's claims against him as being both untimely and as failing to state a claim on which relief can be granted, because he believes Anderson has failed to sufficiently allege Lawson's involvement. (DE 29). For the reasons that follow, these motions shall be **GRANTED IN PART** and **DENIED IN PART**.

## I.    FACTUAL BACKGROUND

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Ct. of Tn.*, 188 F.3d 687, 691 (6th Cir. 1999). As such, the following facts have been taken from Anderson's complaint and will be considered as true for purposes of the pending Fed. R. Civ. P. 12(b)(6) motions to dismiss.

On November 23, 2011, Bob Wiggins was murdered in Bell County, Kentucky. (DE 1 at 4 ¶ 18). Prior to the murder, Kimberly York invited Wiggins to her residence under the pretense of purchasing OxyContin. *Id.* at ¶ 19–20. Wiggins left York's residence in the company of James Otis Sizemore, who had told Wiggins that someone wanted to purchase pills from Wiggins on top of Red Bird Mountain. *Id.* at 4–5 ¶¶ 21. Upon reaching the top of the mountain and exiting their car, Sizemore beat Wiggins multiple times, leaving a divot

in his skull. *Id.* at ¶ 22–23. Sizemore then used a knife found in Wiggin's pocket to slash Wiggin's throat and stab him eighteen (18) times. *Id.* at ¶ 24.

Sizemore fled the scene in Wiggin's car and ingested some of Wiggin's pills. *Id.* at ¶ 24–25. He drove to Jeremy Ferrell's residence, where he showered and changed clothing. *Id.* at ¶ 26–28. That evening, Sizemore burned Wiggin's car in Barborville, Kentucky. *Id.* at 6 ¶ 29. Two days later, on November 25, 2011, Sizemore and Jeff Gray went to Lowes Department Store in Corbin, Kentucky, where they purchased a number of items used to bury Wiggin's body. *Id.* at ¶ 30. They buried Wiggins on top of Red Bird Mountain. *Id.* at ¶ 31.

Faye Scott, Wiggin's sister, accompanied by Kimberly York, filed a missing persons report with the Knox County Sherriff's Office on December 1, 2011. Defendant Eubanks helped file the report. *Id.* at ¶ 32–34. Defendants Eubanks and Pickard began the investigation into Wiggins death by interviewing York, who indicated that Wiggins was last seen leaving her residence with Sizemore on November 23, 2011. York also indicated that Plaintiff Anderson and Dave Fox might have information about the murder. *Id.* at ¶¶ 36–37.

Eubanks and Pickard interviewed Anderson, who indicated that he had been caring for a handicapped child on the date of Wiggin's murder. *Id.* at 7 ¶ 38–40. The evening of Wiggin's murder, however, Anderson encountered Sizemore and Jeremy Ferrell at the grocery store, where Sizemore asked Anderson to follow Sizemore back to Ferrell's residence. *Id.* at 41–43. Mr. Anderson recalled that Sizemore was driving a black Toyota Camry at the time, which is the same make, model, and color of the car that belonged to Wiggins. *Id.* at 8 ¶ 44, 5 ¶ 26. Sizemore later burned papers found in the car, and gave a black coat and hat from the car to Anderson. *Id.* at 8 ¶ 45–48. Dave Fox, a local resident, was able to corroborate the information provided by Anderson. *Id.* at 8–10.

Eubanks and Pickard next interviewed Sizemore. *Id.* at 10 ¶ 60. At the time, the officers knew that all of the evidence pointed to Sizemore, but Sizemore claimed he was not involved in the murder. *Id.* at 10–11 ¶ 60–64. Eubanks and Pickard became frustrated with Sizemore and turned to coaching him on what they wanted him to say. *Id.* at 11–12 ¶ 65–73. Eubanks and Pickard then coached Sizemore to implicate Anderson as the murderer, with stolen pills as the motive. *Id.* at ¶ 74–77.

After obtaining false statements from Sizemore implicating Anderson as the murderer, Pickard reached out to Defendant York and the KSP Defendants to seek their aid in the investigation. In the same conversation, Pickard indicated that Sizemore had revealed the location of Wiggins' body. *Id.* at 13 ¶ 84–85. On December 2, 1011, Bob Wiggin's body was discovered at the top of Red Bird Mountain—exactly where Sizemore said it would be. *Id.* at 10 ¶ 60, 14 ¶¶ 87–89.

Defendants York, Eubanks, and Johnson interviewed Sizemore once again. *Id.* at 14 ¶ 93. At this interview, York, Eubanks, and Johnson fabricated a fictionalized narrative of Wiggin's murder, which they knew was false, and which was conclusively proved untrue through their subsequent investigation.[2] Nonetheless, the officers convinced Sizemore to go along with the fabrication, naming Anderson as the murderer. *Id.* at 15 ¶ 94–99.

On December 3, 2011, little more than one week after Wiggins' murder and one day after the finding of his body, Defendant Mefford signed a criminal complaint against Anderson. On the same day, Anderson was arrested for the murder of Wiggins. *Id.* at 21 ¶ 134–135. The Knox County and KSP Defendants knew that the statements used to obtain the criminal complaint against Anderson were false and that probable cause did not exist to

---

[2] Various findings of the defendants' investigation as to Sizemore's involvement in the murder and the defendants' efforts to suppress this evidence, while fabricating other evidence to frame Anderson, is outlined in Anderson's complaint on pages sixteen (16) through twenty-four (24), including an additional false statement obtained from Jeremiah Anderson by Defendant Lawson.

initiate charges against Anderson. Nonetheless, the defendants continued to conspire together to suppress exculpatory evidence and preserve fabricated evidence, which implicated Anderson in Wiggins' murder and aided in his prosecution through the end of Anderson's trial. *Id.* at ¶ 136–23 ¶ 147.

After spending nearly five (5) years in custody on false charges based on fabricated evidence and enduring a capital trial, Anderson was acquitted.[3] *Id.* at 24 ¶ 156–157.

## II. ANALYSIS

### A. Standard of Review

To survive a Fed. R. Civ. P. 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Wesley v. Campbell*, 779 F.3d 421, 427 (6th Cir. 2015); *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 538 (6th Cir. 2012).

Although "plaintiffs need not meet a 'probability requirement' . . . they must show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Wesley*, 779 F.3d at 427-28 (quoting *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011)). "In ruling on the issue, a district court must 'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" *Id.* at 428 (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). It is the defendant who "has the burden of showing that the plaintiff has failed to state a claim for relief." *Id.*

---

[3] The Court does not fail to note that counsel for Anderson mistakenly alleged that Plaintiff was convicted of murder at Paragraph 180 of the Complaint. (DE 1 at 28–29 ¶ 180).

**B. 42 U.S.C. § 1983**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged violation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *Miller v. Sanilac Cty.*, 606 F.3d 240, 247 (6th Cir. 2010). "If a plaintiff fails to make a showing on any essential element of a § 1983 claim, it must fail." *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).

Because § 1983 "is not itself a source of any substantive rights, but instead provides the means by which rights conferred elsewhere may be enforced," the Court's "first task . . . is to identify the specific constitutional or statutory rights allegedly infringed." *Meals v. City of Memphis*, 493 F.3d 720, 727-28 (6th Cir. 2007). "That [a plaintiff] asserts claims under various constitutional provisions does not control [the Court's] inquiry." *Moldowan v. City of Warren*, 578 F.3d 351, 376 (6th Cir. 2009). "Rather, the critical question is whether the 'legal norms' underlying those claims implicate clearly established constitutional rights." *Id.* (citing *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985)).

Anderson alleges that the defendants violated his constitutional rights under the Fourth and Fourteenth amendments when they conspired together to frame him for the murder of Bob Wiggins. (DE 1). Specifically, Anderson alleges seven different constitutional violations that might be remedied under Section 1983: (1) malicious prosecution, (2) fabrication of evidence, (3) due process violations, (4) supervisor liability, (5) failure to intervene, (6) conspiracy, and (7) a claim under *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978). (DE 1 at 25 ¶ 162–35 ¶ 211). All of the defendants' motions to dismiss, (DE 25; DE 29; DE 30), argue that Anderson's claims are time barred and that Anderson has otherwise failed to state a claim.

### a. Count I: Malicious Prosecution

"The Sixth Circuit 'recognizes a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment,' which 'encompasses wrongful investigation, prosecution, conviction, and incarceration.'" *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (quoting *Barnes v. Wright*, 449 F.3d 709, 715–16 (6th Cir. 2006)). "To succeed on a malicious-prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove" four elements. *Id.* "First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant 'made, influenced, or participated in the decision to prosecute.'" *Id.* (quoting *Fox v. DeSoto*, 489 F.3d 277, 237 (6th Cir. 2007)). "Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution." *Id.* (citing *Fox*, 489 F.3d at 237 and *Voyticky v. Villiage of Timberlake, Ohio*, 412 F.3d 669, 675 (6th Cir. 2005)). "Third, the plaintiff must show that as a consequence of a legal proceeding, the plaintiff suffered a 'deprivation of liberty,' as understood in our Fourth Amendment jurisprudence, apart from the initial seizure." *Id.* at 308–09 (*Johnson v. Knorr*, 477 F.3d 75, 81 (3rd Cir. 2007)). "Fourth, the criminal proceeding must have been resolved in the plaintiff's favor." *Id.* at 309 (citing *Heck v. Humphrey*, 512 U.S. 477, 484 (1994)). Under the Fourth Amendment analysis, it is not necessary to prove malice or specific intent to violate the plaintiff's constitutional rights. *See id.*; *Duncan v. Newby*, 2018 WL 627573, at *3 (W.D. Ky. Jan. 29, 2018).

The general basis for Anderson's malicious prosecution claim is that the defendants, while acting both individually and collectively, influenced and caused the prosecution of Anderson for a crime he did not commit, despite the absence of probable cause, thereby depriving Anderson of his liberty for nearly five years, culminating with his acquittal at

trial. (DE 1 at 25 ¶ 162–27 at ¶ 171). Anderson's claim is timely under *Heck v. Humphrey*, 512 U.S. 477 (1994), and *King v. Harewood*, 852 F.3d 568, 579 (6th Cir. 2017) ("In short, under heck, a malicious-prosecution claim is not available before the favorable termination of criminal proceedings, nor does the limitations period for such a claim begin until the favorable termination of criminal proceedings.").

The Knox County Defendants argue that the existence of a grand jury indictment against Anderson is conclusive proof of probable cause and defeats Anderson's claim of malicious prosecution as a matter of law. (DE 25-1 at 14–15 (citing *Kaley v. United States*, 571 U.S. 302, 328 (2014)). The KSP Defendants present a similar argument. (DE 30-1 at 4–7). In their memoranda of law, these defendants reiterate the long-standing tenant that "an indictment fair upon its face, and returned by a properly constituted grand jury . . . conclusively determines the existence of probable cause." *Kaley*, 571 U.S. at 308 (citing *Gernstein v. Pugh*, 420 U.S. 103, 117 n. 19 (1975)). Such a presentation of this general rule, however, neglects more nuanced Fourth Amendment precedent.

*Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911 (2017), "considered and rejected the argument that either a judge's finding of probable cause or 'a grand jury indictment or preliminary examination' forecloses a Fourth Amendment claim arising from unlawful pretrial detention." *King v. Harewood*, 852 F.3d 568, 588 (6th Cir. 2017). This is because "[t]he Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause," and "[t]hat can happen when the police hold someone without any reason before the formal onset of a criminal proceeding," or that "can occur when legal process itself goes wrong—when, for example, a judge's [or grand jury's] probable-cause determination is predicated solely on a police officer's false statements." *Manuel*, 137 S. Ct. at 919. It is for this reason that the Sixth Circuit recently held that when (1) a law

enforcement officer in the course of a prosecution knowingly or recklessly makes false statements or "falsifies or fabricates" evidence; (2) the false statements and evidence, in addition to any omissions made, are material to the ultimate prosecution of the plaintiff; and (3) the false statements, evidence, and omissions do not consist solely of grand-jury testimony, "the presumption that the grand-jury indictment is evidence of probable cause is rebuttable and not conclusive." *King*, 852 F.3d at 588.

Thus, while "[a]s a general rule, the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause," it is now held that "an exception applies where the indictment was obtained wrongfully by defendant police officers who knowingly presented false testimony to the grand jury." *Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014). Indeed, "even if independent evidence establishes probable cause against a suspect, it would still be unlawful for law-enforcement officers to fabricate evidence in order to strengthen the case against a suspect." *Webb v. United States*, 789 F.3d 647, 670 (6th Cir. 2015).

Anderson alleges that the defendants "knowingly fabricated" evidence, "including without limitation, false police reports, fabricated statements attributed to witnesses, and fabricated testimony offered at grand jury and other pretrial proceedings." (DE 1 t 27 ₽ 173). Accepting these allegations as true for purposes of consideration of the defendants' motions to dismiss, it cannot be said that the mere existence of a grand jury indictment alone is sufficient grounds to dismiss Anderson's malicious prosecution claim against the Knox County and KSP Defendants. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (requiring no more than probability based on the facts accepted as true for purposes of a Rule 12(b)(6) motion). More discovery will be required to determine the merits of Anderson's claim, but

Anderson's pleadings are sufficient to survive the current Rule 12(b)(6) motions. *Hoskins v. Knox County, Ky.*, 2018 WL 1352163 (E.D. Ky. Mar. 15, 2018).

Similarly, Anderson's claim against Defendant Lawson will go forward, despite Lawson's independent motion to dismiss. (DE 29). This is because—while Lawson alleges there are insufficient facts and allegations listed in the complaint to include him in the malicious prosecution claim—Anderson specifically pleads that *all* of the defendant officers "individually, jointly and in conspiracy with each other" violated Anderson's constitutional rights. (DE 1 at 27 ¶ 173). Further, Anderson alleges that Lawson himself worked with the other KSP Defendants to obtain false statements from a witness implicating Anderson as the murderer. *Id.* at 23 ¶ 148–24 ¶ 155. Such an allegation is "beyond mere negligence or innocent mistake," as is required to satisfy the first element of a malicious prosecution claim. *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015). At this stage of litigation, the Court is required to accept Anderson's allegations as true. Accordingly, Anderson's malicious prosecution claim shall go forward against all defendants, whose motions to dismiss shall be denied. (DE 25-1 at 13–15; DE 29-1 at 6–11; DE 30-1 at 4–7).

### b. Count II: Fabricated Evidence

### i. Fourth Amendment

"A Fourth Amendment claim for fabricated evidence lies where a defendant knowingly manufactures probable cause, thereby effecting a seizure." *Robertson v. Lucas*, 753 F.3d 606, 616 n.5 (6th Cir. 2014). To adequately state a claim for relief for fabrication of evidence under the Fourth Amendment, a plaintiff must allege that the defendant knowingly fabricated evidence against him or her and that there is a reasonable likelihood that the false evidence would have affected the decision of the jury. *Gregory v. City of Louisville*, 444 F.3d 725, 737 (6th Cir. 2006) (citing *Stemler v. City of Florence*, 126 F.3d 856, 872 (6th

Cir.1997)). In Kentucky, this Section 1983 claim is governed by the one-year statute of limitations of Ky. Rev. Stat. Ann. § 413.140(1)(a). *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). The accrual date of the Fourth Amendment claim, however, is a question of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007).

When precisely the accrual date commences for a Section 1983 action challenging "post-legal-process pretrial detention" has been squarely framed but left unresolved by the Supreme Court. *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 921–22 (2017). Following and adopting the reasoning of its own precedent, however, the Court determines that a Fourth Amendment fabrication of evidence claim accrues at the date of the termination of proceedings in a defendant's favor. *Hoskins v. Knox County, Ky.*, 2018 WL 1352163, *15 (E.D. Ky. Mar. 15, 2018); *cf. Mills v. Barnard*, 869 F.3d 473, 484 (6th Cir. 2017) (applying Tenn. Code Ann. § 28-3-104(a) and holding that "the statute of limitations did not begin to run until the grant of the prosecution's *nolle prosequi* motion [] which terminated the criminal proceeding").

*Hoskins* reasoned that a fabrication of evidence claim is analogous to a malicious prosecution claim, and that the same accrual rules should apply to both. Although a fabrication of evidence claim does not require proof of favorable termination, both malicious prosecution and fabrication of evidence "seek recompense for the same injury—unlawful post-legal process pretrial detention—and permit recovery of the same damages." *Hoskins*, 2018 WL 1352163, at*15. The theories are "two sides of the same coin," "two theories of liability for unlawful pretrial detention under the Fourth Amendment." *Id.* The Court adopts this reasoning in full. Accordingly, as Anderson was acquitted on May 25, 2016, and he filed this suit on May 22, 2017, Anderson's Fourth Amendment fabrication of evidence claim is timely, just as his malicious prosecution claim.

Anderson's complaint states that the defendants knowingly, jointly and as individuals, fabricated false evidence, including police reports, statements, and testimony offered both to the grand jury and for other pretrial proceedings. (DE 1 at 27 ¶ 173). Anderson further alleges that this information affected the decisions of the grand jury and courts that considered the false evidence without knowledge of its falsity, resulting in the deprivation of Anderson's liberty for a period of nearly five (5) years prior to his acquittal at trial. *Id.* at 27 ¶ 174–28 ¶ 176. These factual allegations are sufficient to ensure the survival of Anderson's Fourth Amendment fabrication of evidence claim for purposes of the pending Fed. R. Civ. P. 12(b)(6) motions. *Mills*, 869 F.3d at 485. Accordingly, the defendants' motions to dismiss, (DE 25-1 at 9–12; DE 29-1 at 11–12; DE 30-1 at 9–11), shall be denied with regard to Anderson's Fourth Amendment fabrication of evidence claim.

### ii. Fourteenth Amendment

"*Brady v. Maryland* familiarly holds that prosecutors must turn over favorable evidence to the accused when the evidence is material either to guilt or punishment; wrongful withholding is a violation of the right to due process." *Robertson v. Lucas*, 753 F.3d 606, 619–20 (6th Cir. 2014) (citing *Brady v. Maryland*, 373 U.S. 83, 89 (1963)). This requirement applies to both police officers and prosecutors, "[b]ecause the police are just as much an arm of the state as the prosecutor, [and] the police inflict the same constitutional injury when they hide, conceal, destroy, withhold, or even fail to disclose material exculpatory information." *Id.* at 620. When, however, "the underlying criminal proceeding terminated in [the plaintiff's] favor, he has not been injured by the act of wrongful suppression of exculpatory evidence." *McCune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir. 1988). For that reason, a *Brady* claim generally may not proceed unless the proceeding ended with the conviction of the plaintiff (defendant in the criminal case). *Id.*

In *Moldowan v. City of Warren*, 578 F.3d 351, 379 (6th Cir. 2009), the Sixth Circuit recognized that the "constitutional concerns underlying *Brady* reach more broadly to preclude other governmental 'authorities' from making a 'calculated effort to circumvent the disclosure requirements established by *Brady*." As such, recent precedent within this Circuit has held that "if fabricating, destroying, or failing to preserve evidence constitutes a due process violation, the violation is likely remedied through a *Brady* claim." *Stillwagon v. City of Delaware*, 175 F. Supp. 3d 874, 900 (S.D. Ohio 2016); *Carter v. Newby*, 2018 WL 3432126, *8 (W.D. Ky. July 16, 2018); *Duncan v. Newby*, 2018 WL 627573, *8 (W.D. Ky. Jan. 29, 2018). As a plaintiff may not pursue a *Brady* claim when he or she was acquitted at trial, *McCune*, 842 F.2d at 907, the defendants' motions to dismiss, (DE 25-1 at 9–12; DE 29-1 at 11–12; DE 30-1 at 8–9), shall be granted with regard to Anderson's Fourteenth Amendment fabrication of evidence claim.

### c. Count III: Substantive Due Process

Anderson alleges that the defendants' actions violated his rights to due process under the Fourteenth Amendment in both Counts II and III of his Complaint. (DE 1). As discussed, to the extent Anderson seeks relief in Count II pursuant to the Fourteenth Amendment for fabrication of evidence—a *Brady* claim—his claim is barred because he was acquitted at trial. *McCune*, 842 F.2d at 907. Similarly, Count III, in which Anderson appears to seek relief for the violation of his rights under the substantive component of the Due Process Clause of the Fourteenth Amendment, must fail as well. This is because "none of the non-*Brady* acts highlighted by [Plaintiff] implicates a recognized substantive due process right." *Stillwagon v. City of Delaware*, 175 F. Supp. 3d 874, 901 (S.D. Ohio 2016).

"The substantive component of the Due Process Clause protects 'fundamental rights' that are so 'implicit in the concept of ordered liberty' that 'neither liberty nor justice would

exist if they were sacrificed.'" *Doe v. Michigan Dept. of State Police*, 490 F.3d 491, 499 (6th Cir. 2007) (quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)). Fundamental rights protected by the substantive component of the Due Process Clause "include 'the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion.'" *Id.* (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)). The Supreme Court has cautioned, however, "that it has 'always been reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this unchartered area are scarce and open-ended.'" *Id.* at 500 (quoting *Glucksberg*, 521 U.S. at 720).

The Court is disinclined to recognize a new substantive due process right. *Carter v. Newby*, 2018 WL 3432126, *8 (W.D. Ky. July 16, 2018); *Duncan v. Newby*, 2018 WL 627573, *8 (W.D. Ky. Jan. 29, 2018). Accordingly, Anderson's substantive due process claim will be dismissed, and the defendants' motions will be granted as to Count III. (DE 25-1 at 9–12; DE 29-1 at 12–14; DE 30-1 at 11–12).

### d. Count IV: Supervisor Liability

Supervisor "liability must be based on more than *respondeat superior*." *Phillips v. Roane City, Tenn.*, 534 F.3d 531, 543 (6th Cir. 2008). "Nor can liability of supervisors be based solely on the right to control employees" or "simple awareness of employees' misconduct." *McQueen v. Beecher Cnty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006). Thus "a supervisory official's failure to supervise, control, or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident or misconduct or in some other way directly participated in it.'" *Id.* (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). "At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the

offending officers." *Shehee*, 199 F.3d at 300. "A mere failure to act will not suffice to establish supervisory liability." *Essex v. City of Livingston*, 518 F. App'x 351, 355 (6th Cir. 2013). Rather, supervisory liability "under § 1983 must be based on active unconstitutional behavior." *Shehee*, 199 F.3d at 300.

Anderson argues that Defendants Pickard (a Knox County Defendant) and Joseph (a KSP Defendant) were deliberately indifferent and reckless in the supervision of their subordinates, failed to adequately train their subordinates, and were directly involved in violating Anderson's constitutional rights by fostering their subordinates in their fabrication of evidence and malicious prosecution of Anderson. (DE 1 at 30 ¶ 188–32 ¶ 194). Pickard, through the Knox County briefing, did not submit any argument that the supervisor liability claim should be dismissed against him. (DE 25-1; DE 38). Pickard, however, moved the Court for permission to join in Joseph's reply arguments that Anderson's supervisor liability claims should be dismissed. (DE 39 at 14 (seeking to join DE 36)). As the Court granted the motion to join, (DE 54), Joseph's arguments for the dismissal of Anderson's supervisor liability claim shall be entertained with regard to both Pickard and Joseph. (DE 36 at 12–13).

Joseph argues that none of the defendants took part in any "underlying wrongful conduct," and "thus a claim for supervisory liability must be dismissed." *Id.* at 13. Anderson, however, has pled sufficient factual allegations for his supervisor liability claim to go forward. Although Anderson does allege that Joseph and Pickard failed to supervise and train their subordinates, Anderson also alleges that they were personally involved in the violation of Anderson's rights, and undertook conduct that was intentional, malicious, willful, and deliberately indifferent to Anderson's rights. (DE 1 at 32 ¶ 193–194). This satisfies the standard of *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), which, at the

Rule 12(b)(6) stage, requires only plausible factual allegations that Joseph and Pickard "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *See also Hoskins v. Knox County, Ky.*, 2018 WL 1352163, *16 (E.D. Ky. Mar. 15, 2018). Accordingly, the defendants' motions to dismiss shall be denied with regard to Count IV of Anderson's complaint. (DE 30 at 12–14; DE 36 at 12–13).

### e. Count V: Failure to Intervene

To state a failure to intervene claim, a plaintiff must allege that the defendant "(1) observed or had reason to know that [constitutional harm] would be or was [taking place], and (2) had both the opportunity and the means to prevent the harm from occurring." *Sheffey v. City of Covington*, 564 F. App'x 783, 793 (6th Cir. 2014) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)). This requirement is identical regardless of whether the claim is alleged against an officer or that officer's supervisor. *Smith v. Heath*, 691 F.2d 220, 224–25 (6th Cir. 1982). A defendant cannot be held liable for a failure to intervene, however, unless there was some "realistic opportunity to intervene and prevent harm." *Well v. City of Dearborn Heights*, 538 F. App'x 631, 640 (6th Cir. 2013) (citing *Ontha v. Rutherford City, Tenn.*, 222 F. App'x 498, 507 (6th Cir. 2007)).

Anderson alleges that the defendant officers were aware of the continued violations of his rights, and stood by without intervening to prevent his harm, despite the reasonable opportunity to do so. (DE 1 at 32 ¶ 196). The Knox County Defendants argue that Anderson's claim is time barred and otherwise fails to state a ground for relief. (DE 25-1 at 16). The KSP Defendants note that a failure to intervene claim is premised on an underlying constitutional violation. They then claim that there has been no constitutional violation, arguing that because there has been no constitutional violation, there can be no liability for the KSP Defendants' failure to intervene. (DE 30-1 at 14). Defendant Lawson

independently claims that Anderson's complaint fails to state a failure to intervene claim against Lawson. (DE 29-1 at 14–15).

First, Anderson's claim is timely. *Hoskins v. Knox County, Ky.*, 2018 WL 1352163, *16 (E.D. Ky. Mar. 15, 2018). Logic dictates that the "same accrual date govern both the failure-to-intervene claim and the underlying § 1983 claims that the Defendants are alleged to have failed to intervene and prevent." *Id.* Thus Anderson's failure to intervene claim accrued on May 25, 2016, and his Complaint, filed on May 22, 2018, was within the one-year statute of limitations of Ky. Rev. Stat. Ann. § 413.140(1)(a). *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990).

Second, Anderson plausibly alleges a § 1983 claim for the defendants' failure to intervene sufficient to survive a motion to dismiss. Anderson has alleged that the defendants were aware of the continued violation of his constitutional rights and that, despite realistic opportunities to intervene to prevent or stop the harm and the ability to do so, none of the defendants intervened on his behalf. This satisfies the requirements of *Sheffey v. City of Covington*, 564 F. App'x 783, 793 (6th Cir. 2014), and *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). In addition, Anderson's claim is backed up by a variety of factual allegations. Although some of the allegations are directed solely against the Knox County Defendants, (DE 1 at 32–33 ¶ 199), the majority of the factual claims are directed against all of the defendants, *id.* at ¶¶ 195–197. Indeed, considering Count V together with the rest of Anderson's 228 paragraph Complaint, the Court finds sufficient factual allegations to support his claim that the defendants failed to intervene on his behalf. For that reason, the defendants' motions to dismiss shall be denied with regard to Count V. (DE 25-1 at 16; DE 29-1 at 14–15; DE 30-1 at 14).

### f. Count VI: Conspiracy

"A civil conspiracy claim under § 1983 or *Bivens* lies where there is 'an agreement between two or more persons to injure another by unlawful action.'" *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir.2007)). To succeed on a civil conspiracy claim, a plaintiff "must demonstrate 'that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed' in furtherance of the conspiracy that caused the injury." Id. (quoting Revis, 498 F.3d at 290). While a plaintiff does not need to show an express agreement among the conspirators, some degree of specificity is required. *Id.*; *see also Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985). Circumstantial evidence, however, may provide adequate proof. *Weberg v. Franks*, 299 F.3d 514, 528 (6th Cir. 2000).

Anderson alleges that the defendants reached an agreement amongst themselves to frame him for the murder of Bob Wiggins, and thereby conspired to deprive Anderson of his constitutional rights. (DE 1 at 33 ⁋ 200–34 ⁋ 206). The Knox County Defendants argue that Anderson's civil conspiracy claim is time barred and otherwise fails as a matter of law. (DE 25-1 at 12–13). The KSP Defendants, identical to their argument for the dismissal of Count V of Anderson's complaint, note that a civil conspiracy claim is premised on an underlying constitutional violation. The KSP Defendants assert that there has been no constitutional violation, and argue that without a constitutional violation, there can be no liability for the KSP Defendants' on the conspiracy allegation. (DE 30-1 at 14). Defendant Lawson independently argues that Anderson has failed to state a valid claim against him, because Anderson does not allege Lawson was aware of the conspiracy. (DE 29-1 at 15–18).

The statute of limitations for a civil conspiracy claim "generally begins to run at the time of the last overt act in furtherance of the conspiracy." *Branham v. Micro Comput. Analysts, Inc.*, 2008 WL 1868016, at *2 (E.D. Ky. Apr. 24, 2008) (citing *N. Ky. Tel. Co. v. S. Bell Tel. & Tel. Co.*, 73 F.2d 333 (6th Cir. 1934) (statute of limitations commences upon last overt act performed in furtherance of the conspiracy)). Anderson alleges throughout his Complaint that the conduct perpetuated by the alleged conspiracy—such as suppression of exculpatory evidence and fabrication of inculpatory evidence—continued until his acquittal at trial. Accordingly, because Anderson's claim did not accrue until Anderson's acquittal on May 25, 2016, his Complaint, filed on May 22, 2018, was timely under the one-year statute of limitations. Ky. Rev. Stat. Ann. § 413.140(1)(a). *Hoskins v. Knox County, Ky.*, 2018 WL 1352163, *16 (E.D. Ky. Mar. 15, 2018).

Anderson has sufficiently stated a civil conspiracy claim against the defendants. He specifically claims that the defendants worked together to conceal evidence, fabricate evidence, and mislead the prosecution, courts, and Anderson's own attorneys in an attempt to have Anderson convicted of a murder he did not commit. (DE 1 at 21–22 ¶ 139; *id.* at 33 ¶ 200–34 ¶ 206). The Court is not persuaded by the defendants' arguments to the contrary. At the Rule 12(b)(6) stage, the Court must accept Anderson's allegations as true, and inferences must be drawn in favor of Anderson. *Wesley v. Campbell*, 779 F.3d 421, 427 (6th Cir. 2015). As such, the defendants' motions to dismiss shall be denied with regard to Count VI of Anderson's Complaint. (DE 25-1 at 12–13; DE 29-1 at 15–18; DE 30-1 at 14).

### g. Count VII: *Monell* Claim

"Local governing bodies [] can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where [] the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and

promulgated by that body's officers." *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). An unconstitutional "custom," which "has not received formal approval through the body's official decisionmaking channels," may also be grounds for a suit. *Id.*; *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013). But a county or municipality may be found liable "under § 1983 only where the municipality itself causes the constitutional violation at issue." *City of Canton, Oh. v. Harris*, 489 U.S. 378, 385 (1989). "*Respondeat superior* or vicarious liability will not attach under § 1983." *Id.*

To plead a *Monell* claim, a plaintiff must allege "an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess*, 735 F.3d at 472 (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

Anderson alleges two of these grounds are satisfied. First, Anderson argues that Knox County had a policy or practice of withholding exculpatory information from defendants, including Anderson, and that this policy or practice was ratified by policy makers with the Knox County government who had final decision-making authority. Second, Anderson argues that Knox County officers were inadequately trained and supervised, and that this was one of the policies or practices ratified by the Knox County government. (DE 1 at 34 ¶ 208). Anderson alleges that Knox County's deliberate indifference to his rights resulted in the violations of his rights as discussed throughout his Complaint. *Id.* at ¶¶ 209–10. Knox County seeks the dismissal of Anderson's *Monell* claims, arguing that they are both untimely and that Anderson's complaint is "devoid" of any specificity with regard to any policy or custom of Knox County. (DE 25-1 at 17–19).

20

For the same reasons as discussed previously, Anderson's claim is timely. Logic dictates that the same accrual date controls both the municipal liability claim and the underlying § 1983 claims that the Knox County is alleged to have fostered. *See Hoskins v. Knox County, Ky.*, 2018 WL 1352163, *16 (E.D. Ky. Mar. 15, 2018). Thus, Anderson's municipal claim accrued on May 25, 2016, and his Complaint, filed on May 22, 2018, was within the one-year statute of limitations of Ky. Rev. Stat. Ann. § 413.140(1)(a). *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990).

### i.  Custom, Policy, or Practice

Anderson alleges that Knox County had a policy or practice of withholding exculpatory evidence from defendants and that the policy or practice was ratified by Knox County officials who had final decision making authority. (DE 1 at 34 ¶ 208). To state a *Monell* claim based on "an 'inaction theory,' where a policy of tolerating federal rights violations is unwritten but nevertheless entrenched," the plaintiff must show: "(1) the existence of a clear and persistent pattern of illegal activity; (2) notice or constructive notice on the part of the defendant; (3) the defendant's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the defendant's conduct was the 'moving factor' or direct causal link in the constitutional deprivation." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Doe v. Claiborne Cty., Tenn.*, 103 F.3d 495, 508 (6th Cir. 1996)).

Although exceptionally detailed in its allegations with regard to the specific incidents alleged to have tainted the prosecution of Anderson, Anderson's Complaint does not allege facts indicating specific prior instances of similar misconduct by Knox County against other potential claimants. All Anderson alleges is that Knox County's misconduct was a policy or practice that had been ratified by government officials with final decision making authority.

(See, e.g., DE 1 at 34 ⁋ 206, 208). No example of another case—or even the suggestion of another specific instance—where similar violations occurred, which could have provided notice to Knox County of potential constitutional violations, is alleged. Thus Anderson does not allege the existence of a clear and persistent pattern of illegal conduct that could show Knox County had constructive or actual notice of potential constitutional violations, and Anderson's Complaint fails to allege a plausible claim based on an inaction theory. *Virgil v. City of Newport*, 2018 WL 344986, *16 (E.D. Ky. Jan. 9, 2018).

### ii. Failure to Train

Inadequate training may be the basis for a *Monell* claim. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). This is because, "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). A "municipality's culpability for a deprivation of rights," however, "is at its most tenuous where a claim turns on a failure to train." *Id.* (citing *Oklahoma City. v. Tuttle*, 471 U.S. 808, 822–23 (1985)).

To state a *Monell* claim for failure to train, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference' to the rights of persons with whom the untrained employees come into contact." *Id.* (citing *Harris*, 489 U.S. at 388). "Only then 'can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* (citing *Harris*, 489 U.S. at 389). "Deliberate indifference is a stringent standard of fault," which requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* When "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been

deliberately indifferent to the need" for such training, the failure to train will result in §

1983 liability. *Harris*, 489 U.S. at 390.

Here, Anderson specifically alleges that the Knox County government acted with deliberate indifference toward his constitutional rights. (DE 1 at 34 ⁋ 209). This deliberate indifference allegedly resulted in inadequate training on the requirement that exculpatory evidence be promptly disclosed following a defendant's arrest. *Id.* In support of his argument, Anderson has—throughout his Complaint—listed factual allegations detailing the individual Knox County Defendants' actions including the fabrication of inculpatory evidence and the suppression of exculpatory evidence. Given the importance of the disclosure of exculpatory evidence upon its discovery, and the unconstitutional consequences of fabricating evidence, Knox County's alleged failure to train the individual Knox County Defendants "constitutes deliberate indifference to the 'highly predictable consequence' of the violations of a criminal defendant's constitutional rights." *Virgil v. City of Newport*, 2018 WL 344986, *15 (E.D. Ky. Jan. 9, 2018). In addition, Anderson alleges that this failure to train was the direct and proximate cause of the violation of Anderson's rights. (DE 1 at 34 ⁋ 201). For this reason, Anderson has properly pled a *Monell* claim for failure to train.

### iii. Failure to Supervise

The failure to supervise "theory of municipal liability is a rare one." *Mize v. Tedford*, 375 F. App'x 497, 500 (6th Cir. 2010). "Most agree that it exists and some allege they have seen it, but few actual specimens have been proved." *Id.* "However characterized, [a failure-to-supervise claim] must meet the 'rigorous standards of culpability and causation' that the Supreme Court has required when a plaintiff claims that a municipality has indirectly caused a violation of federal rights in spite of its 'facially lawful' policies." *Id.* Thus, to

survive a Rule 12(b)(6) motion, a plaintiff must show that the government entity "acted with 'deliberate indifference' to the risk of the constitutional violation and that its deliberate indifference was the moving force behind the" constitutional violation. *Amerson v. Waterford Twp.*, 562 F. App'x 484, 492 (6th Cir. 2014) (quoting *Mize*, 373 F. App'x at 500). For the same reasons as Anderson's failure to train claim, Anderson's allegation that Knox County failed to adequately supervise the individual Knox County Defendants survives the pending Rule 12(b)(6) motion. Anderson's allegation that Knox County failed to supervise the individual Knox County Defendants, who were required to disclose exculpatory evidence and refrain from manufacturing inculpatory evidence, constitutes a clear deliberate indifference to Anderson's constitutional rights. *Virgil v. City of Newport*, 2018 WL 344986, *15 (E.D. Ky. Jan. 9, 2018). Accordingly, Knox County's motion to dismiss, (DE 25; DE 25-1 at 17–19), shall be granted in part and denied in part with regard to Count VII, and Anderson's *Monell* claims against Knox County for failure to train and supervise its officers shall proceed.

### h. Qualified Immunity

In their motion to dismiss, (DE 30; DE 30-1), the KSP Defendants argue that qualified immunity precludes Anderson's § 1983 claims. (DE 30-1 at 12–14 (citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). "Qualified or 'good faith' immunity is an affirmative defense that must be pleaded by a defendant official." *Harlow*, 457 U.S. at 815. It is true that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. But, "[w]here an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers

injury caused by such conduct may have a cause of action." *Id.* at 819. Where an official violates clearly established constitutional or statutory rights of which the official should have known, qualified immunity will not protect him or her from suit. *Mitchell v. Forsyth*, 472 U.S. 511, 524 (1985).

Qualified immunity has both objective and subjective elements. *Id.* at 815–16. The objective element requires "a presumptive knowledge of and respect for 'basic, unquestioned constitutional rights.'" *Id.* at 815 (quoting *Wood v. Strickland*, 420 U.S. 308, 322 (1975)). The subjective element requires purely "permissible intentions." *Id.* To survive a motion to dismiss, both elements must be satisfied in the plaintiff's favor. *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015). Nonetheless, "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Id.* at 433.

Taking Anderson's factual allegations as true and drawing all inferences in his favor, *id.* at 427, it is obvious that Anderson's claims survive, and qualified immunity does not apply at this stage of the case. All that Anderson is required to do is "allege [] facts that 'state a claim to relief that is plausible on its face' and that, if accepted as true, are sufficient to 'raise a right to relief above the speculative level.'" *Id.* (quoting *Handy–Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 538 (6th Cir. 2012) (itself quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). Anderson has alleged that the KSP Defendants were involved in a conspiracy to frame Anderson for the murder of Bob Wiggins by manufacturing evidence, suppressing evidence, intimidating witnesses, and lying to both the prosecution and the courts. (*See generally* DE 1). Anderson had a clearly established right to be free from such malicious prosecution and fabricated evidence under the Fourth Amendment. *Spurlock v. Satterfield*, 167 F.3d 995, 1005 (6th Cir. 1999). Additionally, the Court has already found that Anderson has stated a claim for malicious prosecution and the

fabrication of evidence. Accordingly, qualified immunity does not apply, and the KSP Defendants' motion for the dismissal of Anderson's complaint on the basis of qualified immunity is denied. (DE 30-1 at 12–13).

### C. Kentucky Law Claims

#### a. Count VIII: Malicious Prosecution

To state a claim for malicious prosecution under Kentucky law, a plaintiff must adequately allege six elements: (1) the defendant initiated, continued, or procured a criminal or civil judicial proceeding against the plaintiff; (2) the defendant acted without probable cause; (3) the defendant acted with malice, which, in the criminal context, means seeking to achieve a purpose other than bringing an offender to justice; (4) the proceeding terminated in favor of the person against whom it was brought; (5) a lack of probable cause for the proceeding; and (6) the plaintiff suffered damages as a result of the proceeding. *Martin v. O'Daniel*, 507 S.W.3d 1, 11-12 (Ky. 2016). "[C]laimants alleging malicious prosecution must strictly comply with each element of the tort." *Garcia v. Whitaker*, 400 S.W.3d 270 (Ky. 2013).

Anderson alleges that the defendants maliciously and without probable cause pursued and caused the prosecution of Anderson for Bob Wiggin's murder, fabricating inculpatory evidence and suppressing exculpatory evidence, causing damages. (DE 1 at 35 ¶¶ 212–216). The Knox County Defendants argue that the existence of a grand jury indictment against Anderson is conclusive proof of probable cause and defeats Anderson's claim of malicious prosecution as a matter of law. (DE 25-1 at 14–15 (citing *Kaley v. United States*, 571 U.S. 302, 328 (2014)). Knox County individually argues it is shielded from suit through the doctrine of sovereign immunity. *Id.* at 19–20. The KSP Defendants present a similar argument. (DE 30-1 at 4–7). Defendant Lawson independently alleges there are insufficient

facts and allegations listed in the complaint to include him in the malicious prosecution claim. (DE 29-1 at 18–19). As before, these substantive arguments fail.

Accepting Anderson's allegations as true for purposes of consideration of the defendants' motions to dismiss, it cannot be said that the mere existence of a grand jury indictment alone is sufficient grounds to dismiss Anderson's malicious prosecution claim against the Knox County and KSP Defendants. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (requiring no more than probability based on the facts accepted as true for purposes of a Rule 12(b)(6) motion). Anderson has plausibly alleged that each defendant actively and maliciously participated in the decision to maliciously prosecute him by employing a variety of unconstitutional means. Anderson has also alleged that there was no probable cause for his detention and that the charges against him were resolved in a manner indicating his innocence. (*See generally* DE 1). More discovery will be required to determine the merits of Anderson's claim, but Anderson's pleadings are sufficient to survive the current Rule 12(b)(6) motions. *Hoskins v. Knox County, Ky.*, 2018 WL 1352163, at *20 (E.D. Ky. Mar. 15, 2018).

Knox County as a sovereign entity, however, is shielded from suit under Kentucky law. *Schwindel v. Meade Cnty.*, 113 S.W.3d 159, 163–68 (Ky. 2001). As such, the Defendants' motions to dismiss shall be granted in part and denied in part with regard to Count VIII of Anderson's Complaint. (DE 25-1 at 19–20; DE 29-1 at 18–20; DE 30-1 at 7–8).

### b. Count IX: Negligent Supervision

"Kentucky's recognition of torts based upon negligent hiring, negligent training, negligent supervision, and negligent retention is well established." M*V Tansp., Inc. v. Allgeier*, 433 S.W.3d 324, 336 n.10 (Ky. 2014). "Kentucky has adopted the Restatement (Second) of Agency § 213 which illustrates the requirements for establishing a claim of

negligent supervision." *Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir. 2003). "[A]n employer may be held liable for negligent supervision only if he or she knew or had reason to know of the risk that the employment created." *Id.*

Anderson alleges that the municipal and supervisory defendants had a duty to properly train and supervise the Knox County and KSP officers, but were grossly negligent in doing so.[4] (DE 1 at 36 ¶¶ 217–220). The Knox County Defendants argue they are entitled to sovereign immunity and that Anderson's negligent supervision claim is time barred. (DE 25-1 at 19–20). The KSP Defendants argue that they are entitled to qualified immunity. (DE 30-1 at 15–18).

First, Anderson's claim is timely. Negligent supervision is dependent upon the underlying torts of the supervisors' subordinates. Thus Anderson's negligent supervision claim accrued at the same time as the Kentucky law malicious prosecution claim from which it derives: May 25, 2016, when Anderson was acquitted at trial. *Hoskins v. Knox County, Ky.*, 2018 WL 1352163, at *21 (E.D. Ky. Mar. 15, 2018) (citing *Grego v. Meijer, Inc.*, 187 F. Supp. 2d 689, 694 (W.D. Ky. 2001)).

Second, while sovereign immunity does shield Knox County from suit, it does not shield Defendant Pickard. "A county government is cloaked with sovereign immunity," and a county may not, "absent a legislative waiver of immunity," "be held vicariously liable in a judicial court for the ministerial acts of its agents, servants, and employees." *Schwindel v. Meade Cnty.*, 113 S.W.3d 159, 163 (Ky. 2001). Sovereign immunity, however, does not shield a county employee from liability individually for his or her tortious acts performed

---

[4] The Court does not fail to notice counsel for Anderson's inclusion of a "Defendant Pickrell," who is not a named Defendant in this case. It appears that Pickrell comes from another case, *Hoskins v. Knox County*, 6:17-cv-84-REW-HAI, in which Pickrell is a named defendant. Counsel for Anderson represents the plaintiffs in that case as well. Lovey & Lovey included identical paragraphs in the complaints of both this case and *Hoskins. Compare Hoskins*, 6:17-cv-84-REW-HAI, at DE 1 ¶ 188, *with Anderson v. Knox County*, 6:17-cv-133, at DE 1 ¶ 218.

within the scope of his or her employment. Ky. Rev. Stat. Ann. § 65.2005. *See Schwindel*, 113 S.W.3d at 167; *Louisville/Jefferson Cnty. Metro Gov. v. Braden*, 519 S.W.3d 386, 393 (Ky. Ct. App. 2017).

Finally, Kentucky law qualified immunity does not shield Defendants Pickard and Joseph from suit. (DE 30-1 at 15–18; DE 36 at 12–13; DE 39 at 14; DE 54 (permitting Pickard to join in Joseph's argument for Kentucky law qualified immunity)). "Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, i.e., those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority." *Yanero v. Davis*, 65 S.W.3d 510, 521-22 (Ky. 2001). "Conversely, an officer or employee is afforded no immunity from tort liability for the negligent performance of a ministerial act, i.e., one that requires only obedience to the orders of others, or when the officers duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.* at 522.

Thus whether qualified immunity is an available defense depends on the act performed. Acts involving supervision and training are consistently held to be discretionary functions. *Nichols v. Bourbon Cty. Sheriff's Dep't*, 26 F. Supp. 3d 634, 642 (E.D. Ky. 2014); *Rowan Cty. v. Sloas*, 201 S.W.3d 469, 480 (Ky. 2006); *Doe v. Magoffin Cnty. Fiscal Court*, 174 F. App'x 962, 973 (6th Cir. 2006). Accordingly, whether qualified immunity applies shields Joseph and Pickard from suit under Kentucky law depends on whether their acts of supervision and training were performed in good or bad faith. *Nichols*, 26 F. Supp. 3d at 642. Bad faith "can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position, i.e., objective unreasonableness; or if the

officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." *Yanero v. Davis*, 65 S.W.3d 510, 523 (Ky. 2001).

Anderson alleges that Defendants Joseph and Pickard failed to properly train and supervise their subordinates, despite their duty to do so. (DE 1 at 36 ¶¶ 217–220). Anderson also alleges that they failed to provide adequate policies to prevent the fabrication of evidence and the suppression of exculpatory evidence. Anderson finally alleges that these acts were grossly negligent, and resulted in the deprivation of Anderson's constitutional rights. *Id.* At this stage of the proceedings, where the Court must consider Anderson's allegations as true and draw all reasonable inferences in his favor, the Complaint contains sufficient factual allegations to suggest bad faith. *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015); *Rowan Cty. v. Sloas*, 201 S.W.3d 469, 485-86 (Ky. 2006) ("If an officer knew or reasonably should have known that the action he took would violate a [clearly established] right of the plaintiff, bad faith may be found to exist.").

Thus, for the above reasons, the Knox County Defendants' motion to dismiss, (DE 25-1 at 19–20), shall be granted as to Knox County and denied as to Defendant Pickard, the KSP Defendants' motion to dismiss, (DE 30-1 at 15–18), shall be denied, and Count IX of Anderson's complaint shall proceed against Defendants Joseph and Pickard.

### c.   Count X: Intentional Infliction of Emotional Distress

In Kentucky, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *See* Restatement (Second) of Torts § 46. Outrageous conduct "'is a deviation from all reasonable bounds of decency and is utterly intolerable in a civilized community.'" *Craft v. Rice*, 671 S.W.2d 247, 250-51 (Ky. 1984).

Kentucky courts characterize intentional infliction of emotional distress, otherwise known as "outrage," as a gap-filler tort claim. *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky. App. 1993). "[W]here an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie." *Id.* Thus Kentucky law does not permit an intentional infliction of emotional distress theory to proceed when another tort theory, such as negligent supervision, may provide a ground for relief. *See Childers v. Geile*, 367 S.W.3d 576, 582 (Ky. 2012).

As the Court has found that Anderson's negligent supervision claim may proceed, Anderson's intentional infliction of emotional distress claim must be dismissed as a matter of Kentucky law. *Id.* The defendants' motions to dismiss shall be granted with regard to Count X of Anderson's Complaint. (DE 25-1 at 15–16; DE 29-1 at 20–22; DE 30-1 at 18–19).

### d.  Count XI: *Respondeat Superior*

A "principal is vicariously liable for damages caused by torts of commission or omission of an agent ... acting on behalf of and pursuant to the authority of the principal." *Williams v. Ky. Dep't of Educ.*, 113 S.W.3d 145, 151 (Ky. 2003). Therefore, "[u]nder certain conditions, an employer will be vicariously liable for the torts of its employees." Booker, 350 F.3d at 518 (citing *Osborne v. Payne*, 31 S.W.3d 911 (Ky. 2000)).

Anderson does not state an independent Kentucky-law tort claim against Knox County. Rather, Anderson seeks relief against Knox County through the alleged torts of Knox County's agents. (DE 1 at 37 ¶¶ 226–228). As determined above, Anderson's intentional-infliction-of-emotional-distress claim fails as a matter of law. Further, negligent supervision, Anderson's remaining Kentucky-law tort claim, cannot support a *respondeat*

*superior* theory, because it is alleged directly against the municipal defendants and supervisors. *Virgil v. City of Newport*, 2018 WL 344986, *18 (E.D. Ky. Jan. 9, 2018). In any event, Knox County as an entity is shielded from suit under due to its sovereign immunity. *Schwindel v. Meade Cnty.*, 113 S.W.3d 159, 163 (Ky. 2001). For these reasons, Knox County's motion to dismiss shall be granted with regard to Count XI. (DE 25-1 at 19–20).

### III.    CONCLUSION

For the reasons stated herein, **IT IS ORDERED** as follows:

**(1)** The Knox County Defendants' Motion to Dismiss, (DE 25), is **GRANTED** as to **Count II** (Fourteenth Amendment fabrication of evidence claim), **Count III** (Fourteenth Amendment substantive due process), **Count X** (Kentucky law intentional infliction of emotional distress), and **Count XI** (Kentucky law respondeat superior); and is otherwise **DENIED**.

**(2)** The KSP Defendants' Motion to Dismiss, (DE 30), is **GRANTED** as to **Count II** (Fourteenth Amendment fabrication of evidence claim), **Count III** (Fourteenth Amendment substantive due process), and **Count X** (Kentucky law intentional infliction of emotional distress); and is otherwise **DENIED**.

**(3)** Defendant Lawson's Motion to Dismiss, (DE 29), is **GRANTED** as to **Count II** (Fourteenth Amendment fabrication of evidence claim), **Count III** (Fourteenth Amendment substantive due process), and **Count X** (Kentucky law intentional infliction of emotional distress); and is otherwise **DENIED**.

As a result, the following claims survive against all defendants: Count I (malicious prosecution), Count II (Fourth Amendment fabrication of evidence claim), Count V (failure to intervene), and Count VI (conspiracy). In addition, the following claims survive against

the supervisory defendants: Count IV (supervisor liability), Count VIII (Kentucky law malicious prosecution), and Count IX (Kentucky law negligent supervision).

Further, Count VIII (Kentucky law malicious prosecution) survives for the non-supervisory defendants, and Anderson's Count VII *Monell* claims against Knox County for failure to train and failure to supervise proceed.

Dated September 27, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY